**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

ROBERT E. WOLF, JR., :

                      Plaintiff,

  -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,
                      Defendant. :

Case No. 3:08-cv-349

District Judge Thomas M. Rose
Magistrate Judge Michael R. Merz

**REPORT AND RECOMMENDATIONS**

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v.*

*Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an

application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the

Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed applications for SSD and SSI on June 22, 2004, alleging disability from December 12, 2003, due to a back impairment and AADD[1]. (Tr. 45-56, 479-81; 67-76). Plaintiff's applications were denied initially and on reconsideration. (Tr. 34-36, 39-41; 484-86, 488-90). A hearing was held before Administrative Law Judge Thaddeus Armstead, (Tr. 494-539), who determined that Plaintiff is not disabled. (Tr. 10-25). The Appeals Council denied Plaintiff's request for review, (Tr. 6-9), and Judge Armstead's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Armstead found that Plaintiff has severe vertebrogenic disorder of the lumbar spine, cerebral palsy with left leg weakness, and a depressive disorder NOS, but that he does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 15, ¶ 3, Tr. 19, ¶ 4). Judge Armstead also found that Plaintiff has the residual functional capacity to perform a limited range of light work. (Tr. 19, ¶ 5). The Judge then used section 202.21 as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 24, ¶ 10). Judge Armstead concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 25).

Plaintiff has a history of cerebral palsy which affects his left leg. *See,* Tr. 166.

In 2004, Plaintiff fell on his back and buttocks, following which he complained of paralumbar back pain, numbness going down his left lower extremity, and pain into his thigh, leg,

---

[1] Plaintiff subsequently amended the onset date to February 7, 2004. (Tr. 66).

4

and foot. *See,* Tr. 197.

Plaintiff treated with pain specialist Dr. Demirjian during the period March 29, 2004, through January 10, 2007. (Tr. 189-201; 440-60). On April 6, 2004, when Dr. Demirjian first evaluated Plaintiff, he reported that Plaintiff had a spastic-like gait with some circumduction of the left lower extremity which Plaintiff reported he had always had, that pinprick was difficult to ascertain, his reflexes were normal, and that Plaintiff was able to toe, heel, and tandem walk without difficulty. *Id.* Dr. Demirjian also reported that Plaintiff had no weakness *per se* but had some increased pain on flexion, extension, and lateral rotation, tenderness over the paralumbar, sacroiliac and sciatic regions, and that his straight leg raising was negative. *Id.* Dr. Demirjian identified Plaintiff's diagnoses as lumbar spondylosis with recent trauma with radiculopathy and he noted that Plaintiff's MRI did not reveal a good reason for Plaintiff's radiculopathy and that it was difficult to document clinical clarification for Plaintiff's allegations. *Id.* On January 4, 2005, Plaintiff underwent a lumbar facet block which Dr. Demirjian performed. *Id.* . An EMG and nerve conduction study performed on January 6, 2005, in conjunction with Dr. Demirjian's treatment of Plaintiff, was negative. *Id.*

Examining psychologist Dr. Schulz reported on November 15, 2004, that Plaintiff has had no mental health treatment, completed school through the twelfth grade in special education, attended one year of college, had normal speech, had an appropriate and congruent affect, and an euthymic mood. (Tr. 166-71). Dr. Schulz also reported that Plaintiff was in the low average range of intelligence, was oriented and alert, and that he had sufficient judgment to make life decisions and conduct his own living arrangements. *Id.* Dr. Schulz identified Plaintiff's diagnosis as depressive disorder NOS and he assigned him a GAF of 62. *Id.* Dr. Schulz opined that Plaintiff's ability to

5

relate to others was minimally impaired, his ability to understand, remember, and follow instructions was minimally impaired, his ability to maintain attention and concentration to perform simple repetitive tasks was minimally impaired, and that his ability to withstand the stress and pressures associated with day-to-day work activity was mildly impaired. *Id.*

The record contains a copy of treating physician Dr. Schear's office notes dated October, 2001, through January 20, 2005. (Tr. 204-62). Although most of those notes are illegible, they seem to reveal that Dr. Schear treated Plaintiff for various medical complaints and conditions including back pain, diarrhea, laryngitis, injury to finger, infection in gums, sore throat, and shoulder pain. *Id.*

A December 16, 2003, lumbar spine x-ray revealed degenerative changes at T-12 and L-1 with some mild wedge vertebral body deformities, (Tr. 257), and a February 23, 2004, lumbar spine x-ray indicated no changes since December 16, 2003. (Tr. 255).

A March 16, 2004, lumbar CT revealed minor degrees of central canal narrowing. but no focal or lateralizing disc herniation. (Tr. 253-54).

A November 24, 2004, MRI of Plaintiff's lumbar spine revealed discogenic spondylosis at L1-2, diffuse subligamentous protrusion at L5-S1 with subtle, if any, mass effect on the thecal sac, and small ventral bar-disc complex at the remaining levels. (Tr. 250).

Plaintiff consulted with neurosurgeon Dr. Taha on February 16, 2005, who reported that Plaintiff had normal sensation, normal reflexes, limited ranges of motion due to pain, normal strength, and an antalgic gait. (Tr. 265-66). Dr Taha identified Plaintiff's diagnosis as lumbar disc displacement. *Id.*

An April 28, 2005, lumbar diskogram reproduced Plaintiff's exact sharp low back

and radiating leg pain with diffuse annular degeneration without tear or extravasation. (Tr. 270). A CT of Plaintiff's lumbar spine performed on that same date revealed diffuse L1-2 anular degeneration with no outer anular tears or extravasation and posterior L2-3 angular degeneration with a small focal protrusion and micro-tears with minimal inferior extravasation identified which resulted in right lateral recess stenosis in contact with the right L3 nerve root within the lateral recess. (Tr. 271).

Plaintiff received treatment from Dr. Moore of Dayton Pain and Preventive Medicine during the period June to August, 2005. (Tr. 281-92). Dr. Moore reported on July 1, 2005, that Plaintiff had a flat affect and an anxious appearance, was in moderate distress with a forward flexed antalgia with some mild unsteadiness to his gait, and that he had decreased left leg calf and thigh musculature. *Id.* Dr. Moore also reported that Plaintiff had significantly reduced ranges of motion in the lumbar spine, significant paraspinal tenderness on palpation over the lower lumbar paraspinal intersegmental spaces, pain with rotation, lateral extension, and extension of the lumbar spine, and a positive straight leg raising on the left. *Id.* Dr. Moore noted that Plaintiff was not able to completely extend his left knee, had decreased strength with the squat maneuver, and was not able to toe and heel walk on the left. *Id.* Plaintiff underwent a course of physical medicine and his diagnoses were identified as displacement of lumbar intervertebral disc without myelopathy and lumbago. *Id.*

Plaintiff was hospitalized October 8 through October 12, 2005, after he was injured when a motor scooter he was driving struck a parked car and he sustained several injuries including an epidural hematoma, basilar skull fracture, pneumocephalus, concussion, multiple abrasions/contusions, a left orbital wall fracture, and a left acromion fracture. (Tr. 293-319).

Plaintiff was treated and discharged in good condition. *Id.*

Plaintiff sought mental health treatment at Mental Health Services for Clark County and Madison County during the period February 16 through May 14, 2007. (Tr. 343-55; 461-77). At the time of his initial evaluation, it was noted that Plaintiff was cooperative, calm and directable, oriented, and that his memory seemed to be fairly good. *Id.* It was also noted that Plaintiff's affect was consistent with depression, his mood appeared to be somewhat dysthymic, his motor activity was slow, his thought processes were logical, and that his insight and judgment were fairly good. *Id.* Plaintiff's diagnosis was identified as major depression, recurrent and severe with psychotic features and he was assigned a GAF of 30. *Id.*

On June 5, 2006, psychiatrist Dr. Smith and Plaintiff's counselor at the Clark County Mental Health Services facility reported that Plaintiff had fair to poor abilities to make occupational adjustments, poor abilities to make performance adjustments, and fair to poor abilities to make personal-social adjustments. *Id.* Those mental health care providers also reported that Dr. Smith had seen Plaintiff on one occasion for evaluation, that Plaintiff's diagnosis was schizoaffective disorder, and that he was not able to perform any work-related mental activities. *Id.*

An MRI of Plaintiff's lumbar spine performed on February 7, 2006, revealed left-sided disk herniation at L5-S1 and diskogenic and spondylitic changes. (Tr. 361; *see also,* Tr. 392). On July 5, 2006, an MRI of Plaintiff's lumbar spine revealed several abnormalities at the L1-2, L2-3, L3-4, and L4-5 levels including nonspecific endplate changes, central protrusion with mild diffuse bulge, some endplate spur, hypertrophic facets, and mild or mild to moderate stenosis. *Id.*

Plaintiff continued to receive general medical treatment from Dr. Schear during the period May, 2005, through August, 2006. (Tr. 366-91). On August 15, 2006, Dr. Schear reported

8

that he had been treating Plaintiff for many years, his diagnoses were lumbar spine disc, dizziness, headaches, cerebral subdural hematoma, fracture, shortness of breath, a history of cerebral palsy in the past, and anxiety/depression. *Id.* Dr. Schear also reported that Plaintiff had low back pain radiating into the lower extremities, headaches, shortness of breath, difficulty walking, tenderness of the lumbar spine with flexion, extension, and lateral movement. *Id.* Dr. Schear opined that Plaintiff was permanently and totally removed from all gainful employment. *Id.* Dr. Schear also opined that Plaintiff was able to occasionally lift/carry up to five pounds, stand/walk for one-half to one hour in an eight-hour day, and sit for two to three hours in an eight-hour day and for one to two hours without interruption. *Id.*

Plaintiff consulted with neurosurgeon Dr. Moncrief who reported on April 24, 2006, that Plaintiff's gait was slightly unsteady due to weakness of the left leg from cerebral palsy, that he used a cane to walk, that he (Dr. Moncrief) could not really assess the lower extremity musculature due to the cerebral palsy, his reflexes were 3/5 right patella, 4/5 left, 2-1/2 over 5 Achilles, and that Plaintiff had a nondermatomal sensory loss in the left leg. (Tr. 436-37). Dr. Moncrief identified Plaintiff's diagnoses as low back pain, bilateral leg pain, and lumbar facet atropathy, and he opined that there was no surgical indication in Plaintiff's situation. *Id.*

On May 29, 2006, psychologist Dr. Lawhorn evaluated Plaintiff for the purpose of considering him as a candidate for placement of a spinal cord stimulator. (Tr. 435). At that time, Dr. Lawhorn noted that Plaintiff reported a history of depression which had gotten worse since he started taking the medication Cymbalta, that he had visual and auditory hallucinations which were skeptical and critical of his doctors and treatment, that he had attempted suicide at ages fourteen and twenty-seven, that he had seen a psychiatrist in May, 2006, with an appointment scheduled for

9

August, 2006, and that he was seeing a therapist once a month for the past four months as requested by his attorney. *Id.* Dr. Lawhorn also noted that Plaintiff was oriented, had appropriate speech and affect, had a slowed gait and used a cane, that he appeared to be of average intelligence, and that a Beck Depression Inventory placed him in the moderately depressed range. *Id.* Dr. Lawhorn reported that Plaintiff's pain rating suggested a tendency to exaggerate for attention and that he endorsed the presence of active psychosis with hallucinations, and delusions which was one of the primary exclusionary criteria for a spinal cord stimulator. *Id.*

On July 26, 2006, Dr. Taha reported that Plaintiff's MRI showed disc herniations and degenerative changes which had gotten worse, that he (Dr. Taha) did not recommend surgery as the pathology was too extensive, and that Plaintiff should continue with pain management. (Tr. 394).

Plaintiff consulted with pain specialist Dr. Gomma in January, 2007. (Tr. 397-429). At that time, Dr. Gomma reported that Plaintiff's coordination was poor and his gait was slow and she identified Plaintiff's diagnoses as displaced lumbar disc and degenerative disc disease. *Id.* Dr. Gomma also reported that Plaintiff had sensory and motor deficits, was able to lift/carry up to ten pounds, that he had poor coordination and an abnormal, stiff gait and was able to stand/walk for two hours in an eight-hour day and for one-half hour without interruption, that he was able to sit for four hours in an eight-hour day and for one-half hour without interruption, that he should never balance, stoop, crouch, or crawl, that he had short-term memory deficits and was dependent on narcotic medication for pain control both of which an employer would have to take into consideration, that he was not able to perform light work, and that he was able to perform sedentary work which allowed him to change positions every twenty to thirty minutes. *Id.*

Dr. Demirjian reported on January 10, 2007, that Plaintiff's reflexes were slightly

10

increased, his sensory exam was normal, he walked with a short steppage gait and was sort of spastic in his posture secondary to his cerebral palsy, and that his diagnoses were lumbar spondylosis, facet arthropathy, cerebral palsy, migraine, and previous parietotemporal hematoma. (Tr. 440-41).

Plaintiff alleges in his Statement of Errors that the Commissioner erred by rejecting Drs. Schear's and Smith's opinions. (Doc. 11).

In general, the opinions of treating physicians are entitled to controlling weight. *Cruse v. Commissioner of Social Security*, 502 F.3d 532, 540 (6th Cir. 2007), *citing, Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997) (citing 20 C.F.R. § 404.1527(d)(2) (1997)). In other words, greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242, (6th Cir. 2007), citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Cruse,* 502 F.3d at 540 (alteration in original) (quoting 20 C.F.R. § 404.1502). However, a treating physician's statement that a claimant is disabled is of course not determinative of the ultimate issue. *Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986). A treating physician's opinion is to be given controlling weight if it is well supported by medically acceptable clinical and laboratory techniques and it is not inconsistent with the other substantial evidence in the record. *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284 (6th Cir. 1994).

The reason for the "treating physician rule" is clear: the treating physician has had a greater opportunity to examine and observe the patient. *See, Walker v. Secretary of Health and*

*Human Services,* 980 F.2d 1066, 1070 (6th Cir. 1992). Further, as a result of his or her duty to cure the patient, the treating physician is generally more familiar with the patient's condition than are other physicians. *Id.* (citation omitted).

While it is true that a treating physician's opinion is to be given greater weight than that of either a one-time examining physician or a non-examining medical advisor, that is only appropriate if the treating physician supplies sufficient medical data to substantiate that opinion. *See, Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983); *see also, Bogle v. Sullivan,* 998 F.2d 342 (6th Cir. 1993). A treating physician's broad conclusory formulations regarding the ultimate issue of disability, which must be decided by the Commissioner, are not determinative of the question of whether an individual is under a disability. *Id.* Further, the Commissioner may properly reject a treating physician's opinion if it is not supported by sufficient medical data or if it is inconsistent with the other evidence of record. *Cf., Kirk, supra; see also, Walters, supra.* However, "we do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJs that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion." *Hensley v. Astrue,* ___ F.3d ___, No. 08-6389, 2009 WL 2146467 (6th Cir. July 21, 2009), *citing, Wilson*, 378 F.3d at 545.

Judge Armstead rejected Dr. Schear's opinion on the basis it was not supported by objective evidence and inconsistent with other evidence of record. (Tr. 21).

A review of Dr. Schear's office notes indicates that although they are generally illegible, they contain few, if any, objective clinical findings to support Dr. Schear's conclusion that

Plaintiff is disabled. For example, while Dr. Schear's office notes are in a check-list format, in most all of Dr. Schear's notes which document his encounters with Plaintiff, the areas which provide for the notation of findings are generally blank. *See, e.g.,* Tr. 204-28; 382-90. In addition, when he offered his opinion that Plaintiff is disabled, Dr. Schear did not provide any objective clinical findings, but rather essentially referred to Plaintiff's diagnoses. *See,* Tr. 366-71.

Dr. Schear's opinion is also inconsistent with other evidence of record. For example, treating pain specialist Dr. Demirjian noted on April 13, 2004, that Plaintiff was released to return to work/regular duty on May 20, 2004. (Tr. 196). In December, 2004, Dr. Demirjian essentially noted that Plaintiff's reported results from previous epidural injections were inconsistent, that he (Dr. Demirjian) was having difficulty isolating his localized symptoms, and that Plaintiff's objective test results were "really not that impressive", and that Plaintiff's subjective pain was the most clear feature of difficulty flexing and extending but that his straight leg raising was negative. (Tr. 192-93). Dr. Moncrief noted in December, 2005, that Plaintiff was making a good recovery from his October, 2005, accident, (Tr. 438), and in April, 2006, he noted that he could not find a clinical reason for Plaintiff's subjective complaints. (Tr. 436-47). Further, in June, 2006, Dr. Demirjian reported normal neurological findings. (Tr. 356). In addition, Dr. Taha reported that he could not find a clear explanation for Plaintiff's subjective complaints of severe back pain. (Tr. 265-66). Finally, Dr. Schear's opinion is inconsistent with the reviewing physicians' opinions. *See,* Tr. 160-65. The Court notes that consistent with the opinions from Drs. Demirjian, Moncrief, and Taha, examining psychologist Dr. Lawhorn noted that the result of Plaintiff's evaluation indicated a tendency to exaggerate for attention.

Plaintiff also argues that the Commissioner erred by rejecting Dr. Gomma's opinion.

However, Dr. Gomma evaluated Plaintiff on only one occasion and therefore her opinion was not entitled to controlling, or even great, weight. In addition, Dr. Gomma's opinion is inconsistent with the opinions of the other physicians of record. *See, supra.*

Plaintiff argues that the Commissioner erred by rejecting the opinion of Dr. Smith his treating psychiatrist.

In rejecting Dr. Smith's opinion that Plaintiff is not able to perform most work-related mental activities, Judge Armstead noted that at the time he offered that opinion, Dr. Smith had seen Plaintiff on only one occasion and that his opinion indicated a level of functioning that would require institutionalized care. (Tr. 23).

Indeed, Dr. Smith opined on June 5, 2006, that Plaintiff was not able to perform most work-related mental activities. However, a review of Plaintiff's mental health treatment records indicates that when Dr. Smith offered that opinion, he had examined Plaintiff only once. (Tr. 344). In addition, Plaintiff's treatment records do not support Dr. Smith's opinion about Plaintiff's ability to function. For example, at the time Plaintiff was initially evaluated by his counselor in February, 2006, it was noted that Plaintiff was cooperative, calm, directable, oriented, and that his memory seemed to be fairly good. (Tr. 349-53). In addition, Plaintiff's mental health treatment records reveal that generally the focus of Plaintiff's counseling was for the purpose of allowing Plaintiff to "ventilate". Further, while Plaintiff alleged that he occasionally heard voices, that complaint is noted on only a few occasions during his treatment. *See, e,g,* Tr. 462, 468, 469. Moreover, the record reveals that Plaintiff did not require hospitalization for his alleged mental impairment and that he was treated conservatively and on an outpatient basis. Finally, Dr. Smith's opinion is also inconsistent with Dr. Schulz' findings, Dr. Lawhorn's findings, and with the reviewing mental health

experts' opinions. (Tr. 174-87).

Under these facts, the Commissioner did not err by rejecting Dr. Schear's opinion or Dr. Smith's opinion.

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

August 6, 2009.

s/ **Michael R. Merz**
United States Magistrate Judge

J:\Social Security - Drafts\Wolf_SSD&SSI.wpd

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon

matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).